**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

CHRISTINE M. PENNINGTON,

    Plaintiff,

v.                                    CV 06-0614 WPL/ACT

NORTHROP GRUMMAN SPACE &
MISSION SYSTEMS CORPORATION,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Christine M. Pennington brought this sex discrimination and retaliation suit against her former employer, Northrop Grumman Space & Missions System Corporation (Northrop Grumman or the Company). (Doc. 1 (Compl.).) The matter is before me now on Northrop Grumman's Motion to Dismiss Plaintiff's Claims Based on Mandatory Arbitration Agreement, Pennington's response, and Northrop Grumman's reply. (Doc. 10, 15, 16.)

**BACKGROUND**

*The Dispute Resolution Process*

On January 30, 2004, Northrop Grumman established a Dispute Resolution Process (DRP). (Rivera Aff. Ex. B (DRP).) The Company simultaneously issued an Employees Mediation/Arbitration Process Guide (Process Guide), which provides details regarding the DRP. (*Id.* Ex. C (Process Guide).)

The DRP consists of five progressive steps. The first three steps are informal, and employees are encouraged, but not required, to use them. (DRP at 2, 7.) The last two steps in the DRP are mediation and arbitration. (*Id.* at 2.) Either the employee or the Company may choose not to

mediate a claim and proceed directly to arbitration. (*Id.* at 14.) If either party chooses not to mediate or if mediation fails to resolve the claim, the parties must proceed to arbitration. (Process Guide at 3.)

The DRP's mediation and arbitration provisions cover "[a]ny employment-related claim against the company, its affiliates, its agents, or any of its employees, acting in the course and scope of their employment, that the employee could bring in a court under applicable law." (DRP at 5.) This includes claims for: compensation due; violation of any applicable federal or state law, statute, or regulation; unlawful retaliation; and discrimination or harassment based on sex. (Process Guide at 2.) The provisions also cover any claims that the Company could bring in court against an employee, such as claims for return of property or money, for prohibited competition, and for disclosure of confidential information. (DRP at 5.) Furthermore, the DRP survives an employee's employment with the Company and applies to claims asserted after the termination of employment. (Process Guide at 2.)

## *Pennington's Claims*

In 1998, Pennington began working for Northrop Grumman as an entry-level graphic designer. (Compl. ¶ 9.) She alleges that male employees were subsequently hired at higher grades and higher salaries. (*Id.* ¶¶ 10-11.) In addition, two males who were less qualified than Pennington received promotions. (*Id.* ¶¶ 12-16.) Pennington claims that she was retaliated against when she complained of this discrimination. (*Id.* ¶¶ 17, 23.) On September 27, 2005, she filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). (*Id.* ¶ 19.) One month later, on October 28, 2005, she was fired. (*Id.* ¶ 20.) On April 10, 2006, the EEOC mailed Pennington a Notice of Right to Sue. (Mot. Dismiss Ex. 2.)

### FRAMEWORK FOR DETERMINING WHETHER TO COMPEL ARBITRATION

Northrop Grumman moved to dismiss pursuant to the Federal Arbitration Act (FAA). Although the Tenth Circuit has not squarely addressed the issue, other courts have "uniformly held" that a standard analogous to the summary judgment standard should govern motions seeking to enforce arbitration agreements under the FAA. *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1116 (D. Kan. 2003) (citing cases from the Second, Third, and Seventh Circuits and the Districts of District of Columbia and Connecticut). Northrop Grumman asserts that the summary judgment standard applied by the District of Kansas in *Universal Service* should govern its motion to dismiss. I agree that there is no reason to believe the Tenth Circuit would apply a different standard. *See id.*; *see also Gibson v. Wal-Mart Stores, Inc.*, 181 F.3d 1163, 1166 (10th Cir. 1999) (applying summary judgment standard of review to grant of motion to compel arbitration where parties agreed that was the appropriate standard); *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997) ("When parties dispute the making of an agreement to arbitrate, a jury trial on the existence of the agreement is warranted unless there are no genuine issues of material fact regarding the parties' agreement."). Accordingly, I will apply *Universal Service*'s summary judgment standard to Northrop Grumman's motion.

Under this standard, as acknowledged by Northrop Grumman, the party seeking to compel arbitration has the burden of establishing an agreement to arbitrate. *Universal Serv.*, 300 F. Supp. 2d at 1117; *see also DeArmond v. Halliburton Energy Servs.*, 81 P.3d 573, 577 (N.M. Ct. App. 2003) (placing burden of proving elements of contract on party moving to compel arbitration because the "general rule in contract actions is that the burden of proof is on the party seeking to prove the existence of a fact"). Only if this burden is met does the burden shift to the party opposing arbitration

to demonstrate that a genuine issue of material fact exists. *See Universal Serv.*, 300 F. Supp. 2d at 1117. Therefore, the first issue I must address is whether Northrop Grumman has established an agreement to arbitrate.

### EXISTENCE OF ARBITRATION AGREEMENT

Under the FAA, general state law principles regarding contract formation govern whether a valid agreement to arbitrate exists. *See* 9 U.S.C. § 2; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, it is undisputed that New Mexico supplies the applicable state law. In New Mexico, a contract—including an arbitration agreement—must be factually supported by an offer, an acceptance, consideration, and mutual assent. *Garcia v. Middle Rio Grande Conservancy Dist.*, 918 P.2d 7, 10 (N.M. 1996); *DeArmond*, 81 P.3d at 577.

To establish these elements, Northrop Grumman has submitted an affidavit by a Company information systems technologist. The affidavit states that the technologist e-mailed an Announcement regarding the DRP, along with copies of the DRP and the Process Guide, to each employee's work e-mail address, including Pennington's, on February 9, 2004. (Rivera Aff. ¶¶ 4-5, Ex. D.)[1]

The Announcement, the DRP, and the Process Guide explain that the DRP is mandatory after May 10, 2004, and that it supplants judicial remedies. For example, the Announcement states that "[b]oth the Dispute Resolution and Employees Mediation/Arbitration processes will become effective companywide [sic] on May 10, 2004," that the DRP "culminates in final and binding arbitration," and

---

[1] The Announcement states that the DRP and the Process Guide were also posted on the Company's intranet, called "Gateway." (Rivera Aff. Ex. A (Announcement).) Northrop Grumman asserts in its motion that Pennington "had access to Gateway during her employment . . . and accessed it regularly as part of her job." (Mot. Dismiss at 6.) But the Company cites no evidence to support this assertion.

that "[t]his process is in place of a trial before a judge or jury and requires . . . employees to use it rather than to use court processes for any employment dispute." (Announcement at 2.)

Similarly, the first page of the DRP contains the following statement: "**The Dispute Resolution Process applies to and is binding on Northrop Grumman and all employees . . . hired or who continue to work for Northrop Grumman on or after 10 May 2004.**" (DRP at 1 (emphasis in original).) The DRP explains that "[a]rbitration is a process by which an outside professional arbitrator hears evidence and argument and makes a binding ruling on the claim(s). Arbitration is a substitute for a court trial before a judge or jury." (*Id.* at 13.) The Process Guide contains similar language. (Process Guide at 1-2.)

Northrop Grumman argues that the DRP constituted an offer to arbitrate employment-related claims and that Pennington manifested her acceptance and mutual assent to the offer by continuing in her employment after May 10, 2004. The Company further argues that the mutual promises to arbitrate provide the requisite consideration.

Under New Mexico law, acceptance of an offer must be clear, positive, and unambiguous. *DeArmond*, 81 P.3d at 578. A party's acceptance of a written offer may be implied by the party's conduct. *Id.* If the offer invites acceptance through performance, the beginning of the invited performance may constitute an implied acceptance. *Id.* The concept of implied acceptance applies to at-will employment: If the employer informs employees that the terms of employment are going to be modified as a condition of continued employment, an employee's continued employment may constitute an implied acceptance of the modification. *Id.* "Continued employment, however, will not constitute acceptance, unless the employer proves that the employee actually knew of the modification." *Id.* at 580.

In *DeArmond*, the employer adopted a dispute resolution program that included mandatory arbitration. When one of its employees filed a discrimination suit in state court, the employer sought to compel arbitration. The employer presented proof that it mailed notice of the program to all employees. The mailing included a memorandum, a twenty-two-page plan document, the program's rules, a summary brochure, and a cover letter of explanation. *Id.* at 576. The employee argued that the employer failed to establish the existence of an agreement to arbitrate, and the New Mexico Court of Appeals agreed. *Id.* at 578.

Relying on "general contract law" as found in the *Restatement (Second) of Contracts* and *Corbin on Contracts*, the court held that there must be proof that the employee actually knew of the offer and was aware that remaining on the job constituted acceptance. *Id.* at 579. The court acknowledged that materials mailed to a correct address are presumed to have been received. *Id.* at 578. But the court was "unwilling . . . to equate presumed receipt with actual knowledge of the offer." *Id.* Based on the evidence before it, the court was "unable to ascertain whether [the employee] saw the envelope, opened it, and read it or whether [he] was otherwise conscious of the fact that remaining on the job would be construed as acceptance of an arbitration agreement." *Id.*; *accord Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 321 F. Supp. 2d 142, 147 n.3 (D. Mass. 2004), *aff'd*, 407 F.3d 546 (1st Cir. 2005); *Buckley v. Nabors Drilling USA, Inc.*, 190 F. Supp. 2d 958, 965 (S.D. Tex. 2002) (alternative holding), *aff'd*, 51 F. App'x 928 (5th Cir. 2002). *But see Tinder v. Pinkerton Sec.*, 305 F.3d 728, 731-32, 735-36 (7th Cir. 2002) (indicating that employer established acceptance by submitting evidence that it informed employee about arbitration by including a "payroll stuffer" in the envelope with her paycheck, featuring the program on the cover of its magazine, and distributing a poster to be displayed at work sites, even though employee swore that she did not recall

6

seeing the information).

The *DeArmond* Court further held that the employer failed to establish the element of mutual assent. 81 P.3d at 580. Parties mutually assent to a contract when they have the same understanding of the contract's terms. *Id.* Without proof that the employee knew of the offer, it was impossible to find mutual assent. *Id.*

In this case, I will assume for purposes of argument that a presumption of receipt arises merely from the Company's proof that the e-mail was sent to Pennington. *See Kennell v. Gates*, 215 F.3d 825, 829 (8th Cir. 2000) (stating that there is no principled reason not to apply mailing presumption to in-house computer message systems, provided that they are accepted as generally reliable and that the particular message was properly dispatched). *But see Am. Boat Co. v. Unknown Sunken Barge*, 418 F.3d 910, 913-14 (8th Cir. 2005) (presuming receipt of an e-mail from the court clerk where the clerk's electronic docket entries showed that the e-mail was not returned as undeliverable); *SSI Med. Servs. v. N.J. Dep't of Human Servs.*, 685 A.2d 1, 6 n.1 (N.J. 1996) ("In order to establish proof that electronic messages have been sent, courts may look, for example, to proof of electronic mail return-receipt or to confirmation of downloading or printing."). I will also assume for purposes of argument that copies of the DRP and Process Guide were posted on Northrop Grumman's intranet.

As in *DeArmond*, however, there is no proof that Pennington actually "saw the [e-mail], opened it, and read it or [that she] was otherwise conscious of the fact that remaining on the job would be construed as acceptance of an arbitration agreement." 81 P.3d at 578. Therefore, Northrop Grumman has failed to establish the elements of acceptance and mutual assent.

The two cases relied on by Northrop Grumman are distinguishable. In both of those cases,

it was clear that the employee knew that continued employment would constitute assent to the arbitration agreement. *See May v. Higbee Co.*, 372 F.3d 757, 764 (5th Cir. 2004); *Hightower v. GMRI, Inc.*, 272 F.3d 239, 242-43 (4th Cir. 2001).

In her response to Northrop Grumman's motion to dismiss, Pennington does not specifically argue that the Company failed to establish acceptance and mutual assent.[2] Nevertheless, under the summary judgment standard that Northrop Grumman advocates, the Company bears the initial burden of establishing the arbitration agreement. No burden shifts to Pennington until the Company's burden is satisfied. *See Universal Serv.*, 300 F. Supp. 2d at 1117; *see also Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002) (explaining that the nonmovant's failure to respond to a summary judgment motion does not relieve the court of its duty to examine the evidence presented by the movant to determine if the movant has met its initial burden of demonstrating that it is entitled to judgment as a matter of law); *Burdett v. Harrah's Kansas Casino Corp.*, 294 F. Supp. 2d 1215, 1221, 1229 (D. Kan. 2003) (applying *Reed* where nonmovant filed inadequate response).

Because Northrop Grumman has failed to meet its burden to establish the existence of an arbitration agreement, the proper disposition is to deny its motion without prejudice to refiling. *See Flannery v. Tri-State Div.*, 402 F. Supp. 2d 819, 825-26 (E. D. Mich. 2005); *Toppings v. Meritech Mortgage Servs.*, 140 F. Supp. 2d 683, 685-86 (S.D.W. Va. 2001).

IT IS THEREFORE ORDERED that Northrop Grumman's Motion to Dismiss Plaintiff's Claims Based on Mandatory Arbitration Agreement (Doc. 10) is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

---

[2] She argues that the arbitration agreement lacks consideration and is unconscionable and that she did not knowingly and voluntarily waive her right to a jury trial. Because the elements of acceptance and mutual assent have not been established, it is unnecessary to address these arguments.

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.

9